UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L. TUCKER,

    *Plaintiff*,                                CASE NO. 15-11117

v.                                       DISTRICT JUDGE GERSHWIN A. DRAIN
                                         MAGISTRATE JUDGE PATRICIA T. MORRIS

KANDULSKI, et al.,

    *Defendants*.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
AND TEMPORARY RESTRAINING ORDER (Doc. 6) AND MOTION
TO ORDER MDOC TO PRINT COPIES (Doc. 11).**

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff's motions (Docs. 6, 11) be **DENIED**, his complaint (Doc. 1) be **DISMISSED WITHOUT PREJUDICE**, and his *in forma pauperis* status be **REVOKED**.

**II.    REPORT**

    **A.    Introduction**

Plaintiff L. T. Tucker, Jr., also known as Kitwana Omari Mbwana, is a state prisoner who is currently incarcerated by the Michigan Department of Corrections ("MDOC"). On March 23, 2015, Plaintiff filed a *pro se* civil rights complaint alleging that his constitutional rights were violated through the denial of necessary medical care. (Doc. 1). Plaintiff names five Defendants, Dr. Gerlach, Spitter, Behler, members of the pain management committee, Kandulski, three John/Jane Doe defendants and Corizon, Inc., which provides the MDOC with medical services on a contractual basis. (*Id*.). Plaintiff alleges that Defendants denied him

1

necessary medication to treat the pain he experiences as a result of his "diabetic-peripheral neuropathy ('nerve damage') to the feet, legs, etc." (*Id*. at Page ID 2, 17-21). Plaintiff's request to proceed *in forma pauperis* was granted on May 14, 2015 (Doc. 7). On July 20, 2015, U.S. District Judge Gershwin A. Drain referred Plaintiff's instant motions to the undersigned magistrate judge. (Doc. 14).

### B. Background and Governing Law

On May 4, 2015, Plaintiff moved for a temporary restraining order and preliminary injunction "to ensure plaintiff Tucker, received proper medical care." (Doc. 6, Ex. 1 at PgID 1). Specifically, Plaintiff notes that he "is experiencing continued pain, bleeding, swelling, redness, inflammation, various ulcer eroded sores to the toes [on his] right foot, and inflammation, limited motion and cannot walk properly." (*Id.* at 2). Plaintiff characterizes this as the "deni[al of] care for a serious chronic illness contrary to an [sic] need for medical care." (*Id*. at 3). He further asserts that he "may never walk normally again" if he does not receive necessary medical care (*id*. at 4), and may also require amputation of his lower extremities (*id*. at 5).

On June 12, 2015, Plaintiff filed an additional motion requesting that the Court order the MDOC to "direct[ the] Michigan Department of Corrections to make [7] seven copies of the herein complaint and exhibits to be serve [sic] on defendants's [sic]. (Doc. 11 at 1). In that motion, Plaintiff asserts that "he don't [sic] know if the court is going to issue a [sic] order directing Michigan department of corrections, to allow plaintiff Tucker, to be provided with <u>additional</u> copies of the complaint," though he does not establish whether or why he is unable to acquire such copies himself. (*Id*. at 3).

However, the Court finds that it need not consider these motions, because the "Three Strikes" provision of 28 U.S.C. § 1915(g) bars Tucker's action. That statute provides that a prisoner may not

> bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

*Id*. Plaintiff admits that he "falls under the three-strike rule due to his having filed more than three [non-meritorious] civil actions in federal courts," but contends that he is exempted from this restriction because he is "under immediate danger of serious physical injury," in that he may experience the following harm if he is not granted relief:

> (1) The worsening of extreme and intense continuous pain to his toes in his right foot and right leg, (2) various ulcer eroded sores to the toes in his right foot, (3) swelling, redness, infection, and spontaneous bleeding to his toes in [sic] his right foot, (4) deterioration from lack of treatment for the serious condition of having diabetic peripheral neuropathy ("nerve damage"), (5) being more susceptible to prolong certain serious illnesses such as the continuous extreme pain that Plaintiff Tucker has been experiencing for the last two plus years, (6) sleep deprivation caused by the extreme pain in his feet and legs, (7) pain and more pain), (8) serious risk of amputation to Plaintiff Tucker's toes, foot, or legs."

(Doc. 1 at PgID 16-17).

### C.  Analysis

While Plaintiff admits that he is subject to the three strikes provision of 28 U.S.C. § 1915(g), the Court will independently analyze his litigation history to ensure that he is in fact barred from filing by that provision. On June 7, 2011, the Sixth Circuit Court of Appeals issued an order in *Tucker v. McCauley*, in which it found that "Tucker has had more than three

3

previous complaints dismissed by federal courts as frivolous and he has failed to show that he is in 'imminent danger of serious physical injury,'" and thus found that he was barred from filing his complaint *in forma pauperis*. No. 10-2204, slip op. at 2 (6th Cir. Jul. 6, 2011). The district court in that matter also found that Plaintiff was barred from filing *in forma pauperis* by the three strikes provision, noting that his complaints had been dismissed for reasons of frivolity or failure to state a claim in the following matters: "*Tucker v. Chopin*, No. 94–100, slip op. (W.D. Mich. June 30, 1994); *Tucker v. Kinney*, No. 94–101, slip op. (W.D. Mich. June 30, 1994); *Tucker v. Hembree*, No. 94–105 (W.D. Mich. July 15, 1994); *Percival v. Williams*, No. 00–849 (W.D. Mich. Nov. 29, 2000)." *Tucker v. McCauley*, No. 09-12757, 2010 WL 2884641, at *1 (E.D. Mich. July 20, 2010). That court also found that, as of the time of its decision in July 2010, Plaintiff had been denied leave to file *in forma pauperis* in three other matters where he was also found to have exceeded his three strike limit. *Id*. The Court thus finds that Plaintiff meets the three strikes provision of 28 U.S.C. § 1915(g), and may not file *in forma pauperis* unless he is under imminent danger of serious physical injury.

Plaintiff's assertion that he faces imminent danger of serious physical injury is difficult to square with his factual allegations relating to the medical care he has been denied. The vast majority of Plaintiff's complaint revolves around the alleged denial of certain pain medications to treat his peripheral neuropathy. Plaintiff alleges that Defendant Spitter, a physician's assistant at the E.C. Brooks Correctional Facility, denied him pain medication on May 4, 2012 (Doc. 1 at ¶21); that he was transferred to the Bellamy Creek Correctional Facility, and immediately "sent in several health care requests . . . seeking pain medication," but that he was rebuffed by Defendant Behler, a physician's assistant, who after much cajoling finally agreed to seek approval from the pain management committee to prescribe the pain medication

4

Neurontin on April 29, 2014 (*Id.* at ¶¶22-23, 25, 29); that he was transferred to the Saginaw Correctional Facility, where Defendant Kandulski, presumably a physician at that location, recommended using Tylenol and Motrin to control his pain (*Id.* at ¶¶43, 50); and that on August 27, 2014, the pain management committee and Defendant Corizon denied Defendant Behler's medication request, and that Defendant Kandulski offered the pain medication Mobic (*Id.* at ¶¶55, 57).

Plaintiff's only reference to the denial of any medical care whatsoever other than pain medication occurs in the "Imminent Danger" section of his complaint, in which he attempts to paint a far more expansive picture of the medical care he has been denied. (Doc. 1 at ¶¶83-84). There, he asserts that he is suffering not merely pain, but also a variety of conditions including ulcers, redness, swelling, infection, bleeding, sleep deprivation, and possible amputation. (*Id.*). These assertions find no support in Plaintiff's factual allegations; nowhere does he assert that he has been denied medical treatment for his ulcers, bleeding, or other physical manifestations of his leg ailments. Merely experiencing an ailment does not give rise to a constitutional violation; a cause of action arises when a prisoner is denied adequate medical treatment in the face of such an ailment. *See West v. Atkins*, 487 U.S. 42, 54 (U.S. 1988); *Lewis v. Turner*, 16 F. App'x 302, 303 (6th Cir. 2001). Because Plaintiff's assertion that he has been denied adequate medical treatment for his non-pain symptoms is conclusory and wholly unsupported by the allegations in his complaint, Plaintiff's imminent danger argument must rest solely upon his assertion that his pain is itself an imminent danger of serious physical injury.

Assuming that allegations of pain alone can satisfy the imminent danger exception, Plaintiff has nevertheless failed to set forth facts which support a finding of imminent danger of serious physical injury. Plaintiff concedes that Defendants have attempted to treat his pain

5

with the use of Motrin and Tylenol, Neurontin, and Mobic. (*Id.* at (Doc. 1 at ¶¶29, 50, 57). However, Plaintiff attempts to demonstrate that these medications are equivalent to no treatment at all. Regarding the use of Motrin and Tylenol, Plaintiff alleges that he informed Defendant Kandulski that "these medications had been tried as well as other over the counter pain relievers and that none worked at relieving the pain" (*Id.* at ¶50), and that "Tylenol and Motrin cause seizures if taken longer than two few [sic] weeks" (*Id.* at ¶51). Plaintiff also alleges that he experiences a "seizure disorder when Tylenol or Motrin are taken for any prolonged time (2-3 months)" (*id.* at ¶68), though he points to no support for this assertion. With regard to Neurontin, Plaintiff alleges that Defendant Behler sought approval for that medication (*id.* at ¶29), but the pain management committee rejected that request (*id.* at ¶55). These allegations exculpate Defendant Behler of potential liability for failing to prescribe pain medication where it was necessary, but do not resolve Plaintiff's complaints of pain.

Plaintiff's allegations regarding the use of Mobic, however, are fatal to his assertion that his pain presents an imminent danger of serious physical injury. Plaintiff alleges that he refused Defendant Kandulski's offer of a Mobic prescription because that drug "would have caused adverse side effects and allergic reactions including, but not limited to, hives, difficulty breathing, swelling of the face, lips, tongue or throat, chest pains, weakness, shortness of breath, slurred speech, problems with vision or balance, black, bloody, or tarry stools [sic], and coughing up blood or vomit that looks like coffee grounds." (Doc. 1 at ¶63). Plaintiff further alleges that "Defendant Kandulski is trying to cover up his deliberate indifference by carrying out his adopted policy of experimentation by using Plaintiff Tucker's serious medical need for a human sacrifice" (*id.* at ¶67), and that "Defendant Kandulski's prescription of Mobic would cause . . . serious adverse effects, such as allergic reaction, due to the other medications

6

Plaintiff Tucker is prescribed, such as Vasotec, Entaphil [sic], Aspirin, Cotrin [sic], Glucophage, Humulin, Novilin [sic], and Insulin Umunisuphane [sic] Injections" (*id*. at ¶69). As proof of these asserted adverse reactions, Plaintiff provides a medication reference sheet from www.drugs.com which states that one "should not use Mobic if you are allergic to meloxicam, or if you have a history of allergic reaction to aspirin or other NSAIDs," and that one should "tell your doctor if you have . . . heart disease . . . high blood pressure . . . [or] a seizure disorder such as epilepsy." (*Id*., Ex. 1 at PgID 27). Plaintiff also notes that he "had a conversation with another diabetic prisoner who claimed that he used to take Mobic for diabetic peripheral neuropathy but that a health care provider took him off because Mobic is not to be used for this purpose." (*Id*. at ¶72).

From this limited data and his layperson's understanding of medicine, Plaintiff draws the unreasonable conclusion that Mobic would cause him to experience serious side effects, and the outlandish deduction that Defendant Kandulski is conducting "human experimentation." Plaintiff has provided no reason to believe that Defendant Kandulski is incompetent or has sought to harm him by administering improper medication, and thus no reason to believe that Mobic would be unsuitable to treat his pain. Further, the fact that Mobic *could* interact with Plaintiff's other medications, and *could* cause certain side effects, does not mean that Plaintiff is likely to actually suffer such negative effects; these are factors which any competent medical professional, including Defendant Kandulski, would take into account before prescribing medication.

Moreover, nearly all medications carry some risk of side effects, thus Plaintiff's fear that he may experience some side effects as a result of taking Mobic is not a reasonable ground to reject that medication. *See Williams v. Great Am. Ins. Co.*, No. 11-03083-CV-S-JTM, 2012

WL 5197977, at *5 (W.D. Mo. Oct. 19, 2012). While Plaintiff may not prefer the particular course of treatment which he has been offered, he has fallen far short of demonstrating that he is under an immediate risk of serious physical harm. *See Gresham v. Czop*, No. 1:12-CV-494, 2012 WL 2317558, at *5 (W.D. Mich. June 18, 2012) (holding that "there is no indication that any of these conditions present an imminent danger of serious physical injury. Plaintiff has suffered with and been treated for these conditions over lengthy periods of time. . . . Although Plaintiff disagrees with the course of the medical treatment and insists that surgery is required for one or more condition, no basis exists for concluding that he is in imminent danger of serious physical injury from any of these conditions."); *Rittner v. Weidman*, No. 2:11-CV-0826, 2011 WL 4712008, at *3 (S.D. Ohio Oct. 6, 2011) (collecting cases in which courts found that a prisoner who has been provided with medical treatment but merely disagrees with the treatment methods he has been provided cannot support a finding that they are under imminent danger of serious physical harm); *Murray v. Frontera*, No. 2:08-CV-167, 2009 WL 37181, at *2 (W.D. Mich. Jan. 7, 2009) (holding that a prisoner's assertion that his back pain was not being addressed did not establish that he was under imminent danger of serious physical injury).

Because Plaintiff has failed to demonstrate that he is in imminent danger of serious physical harm, and because his *in forma pauperis* complaint violates the "three strikes" provision of 28 U.S.C. 1915(g), his complaint should be dismissed without prejudice, and his *in forma pauperis* status should be revoked. *See Shabazz v. Campbell*, 12 F. App'x 329 (6th Cir. 2001) (holding that dismissal for violation of the § 1915 three strikes provision should be without prejudice).

Given that Plaintiff's complaint should be dismissed, his motion for a temporary restraining order and preliminary injunction (Doc. 6), and his motion for an order directing MDOC to produce copies of his complaint (Doc. 11) are moot, and should be denied.

Further, as discussed above, the Court finds that Plaintiff has made a habit of repeatedly filing frivolous complaints, and has not been deterred from filing barred actions despite acquiring three strikes. Plaintiff is cautioned that if he continues to file frivolous complaints, the court could find that the imposition of a pre-filing injunction is appropriate, which would mandate that he seek and receive a court order authorizing the filing of any future lawsuits. *See Scott v. Bradford*, No. 13-12781, 2014 WL 6675354, at *4 (E.D. Mich. Nov. 25, 2014) (setting forth the factors involved in determining whether a pre-filing injunction is appropriate, and collecting cases applying those factors).

### D. Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's complaint (Doc. 1) be dismissed without prejudice, his *in forma pauperis* status be **REVOKED**, his motion for a temporary restraining order and preliminary injunction (Doc. 6) be **DENIED AS MOOT**, and his motion for an order directing MDOC to produce copies of his complaint (Doc. 11) be **DENIED AS MOOT**.

### III. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver

of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 11, 2015          S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent to L. Tucker #132271 at Alger Maximum Correctional Facility, N6141 Industrial Park Drive, Munising, MI 49862.

Date: August 11, 2015          By s/Kristen Krawczyk
Case Manager to Magistrate Judge Morris