UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L. TUCKER,

Plaintiff,

v.

KANDULSKI, ET AL.,

Defendant.

_____/

Case No. 15-cv-11117

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
PATRICIA T. MORRIS

OPINION AND AMENDED ORDER ACCEPTING AND ADOPTING
REPORT AND RECOMMENDATION [15], DENYING PLAINTIFF'S MOTIONS [6, 11],
REVOKING PLAINTIFF'S IN FORMA PAUPERIS STATUS [7], AND
DISMISSING PLAINTIFF'S COMPLAINT WITHOUT PREJUDICE

I. INTRODUCTION

The Court initially denied Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction [6] and Motion for an Order Directing the Michigan Department of Corrections to Make 7 Copies of the Complaint and Exhibits for Service on Defendants [9] on September 8, 2015. *See* Dkt. No. 16. In denying the Motions, the Court noted that Plaintiff failed to file a timely objection in accordance with Title 28, United States Code, Section 636(b)(1)(C). However, it has come to the Court's attention that Plaintiff may have mailed a timely objection, even though it was filed late on September 9, 2015.[1] *See* Dkt. No. 18.

The Court has reviewed Plaintiff's Objection to the Magistrate's Report and Recommendation. In his objection, Plaintiff argues that (1) the magistrate made an erroneous finding of fact for not finding him to be in imminent danger, *id*. at 2–4; and (2) that his requested relief of a temporary restraining order and preliminary injunction was improperly determined to

_____

[1] Plaintiff's objection was filed twelve days after the deadline for its submission.

be moot. *Id*. at 4–5. After reviewing these arguments, the Court will still **DENY** Plaintiff's motions [6, 11] as moot, **DISMISS** his complaint [1] without prejudice, and **REVOKE** his *in forma pauperis* status [7].

## II. BACKGROUND

Plaintiff L. Tucker ("Plaintiff"), a.k.a. L. T. Tucker, Jr., a.k.a. Kitwana Omari Mbwana, is an inmate at Alger Maximum Correctional Facility in Munising, Michigan, serving a life sentence for second-degree murder, with possibility of parole. Dkt. No. 1 at ¶ 1 (Page ID # 2). Plaintiff suffers from numerous medical conditions, including diabetes and high blood pressure. *Id*. at ¶ 2 (Page ID # 2). For these ailments, Plaintiff has been prescribed several medications and takes insulin twice each day. *Id*. at ¶ 3 (Page ID # 2).

As a consequence of his diabetes, Plaintiff claims to suffer from peripheral neuropathy in his feet and legs. *Id.* at ¶ 2 (Page ID # 2). He alleges that the peripheral neuropathy causes him chronic and substantial pain. *Id*. at ¶ 6 (Page ID # 3). Plaintiff was seen by Dr. Roger A. Gerlach regarding this pain and claims that Dr. Gerlach was going to schedule Plaintiff for a review with the three-person pain management committee. *Id*. at ¶¶ 6–7, 10 (Page ID # 3). After Plaintiff's transfer to a new facility in October 2011, he met with Defendant Spitter, a physician's assistant, regarding his pain from peripheral neuropathy. *Id.* at ¶¶ 8, 10 (Page ID # 3).

Plaintiff alleges that Defendant Spitter engaged in a pattern or practice of retaliatory adverse action by discouraging health care treatment. *Id*. at ¶ 13 (Page ID # 4). When Plaintiff filed a grievance based upon this belief, the reply stated that "[t]he grievant's medical needs [were] being met" and that Plaintiff was provided with an alternative medication and self-treatment recommendations. *Id*. (Page ID # 30). However, Plaintiff contends that Defendant Spitter never prescribed pain medications for Plaintiff's diabetic neuropathy. *Id*. at ¶ 17 (Page ID

# 5). He further alleges that he has never been on any pain medication in his life.[2] *Id*. at ¶ 18 (Page ID # 5).

Plaintiff was transferred again in or around April 2012. *Id*. at ¶ 22 (Page ID # 6). At his new facility, Plaintiff again alleges that a physician's assistant, Defendant Behler, engaged in a pattern or practice of taking retaliatory adverse action to discourage health care treatment. *Id* at ¶¶ 25, 34 (Page ID # 6, 8). Plaintiff alleges that Defendant Behler said he would seek approval from the pain management committee for Altram or Neuroton, pain medications.[3] *Id*. at ¶ 29 (Page ID # 7).

After Plaintiff was transferred in June 2014, *id*. at ¶ 43 (Page ID #9), he alleges that yet another medical provider, Defendant Kandulski, engaged in deliberate indifference and retaliation against him. *Id*. at ¶ 74 (Page ID # 14). Defendant Kandulski offered Plaintiff over-the-counter pain medications, Tylenol and Motrin, which Plaintiff declined. *Id*. at ¶ 50 (Page ID # 10). In August 2014, the pain management committee denied the request for pain medication. *Id*. at ¶ 55 (Page ID # 11). Defendant Kandulski then offered Plaintiff a medication called Mobic, which he also declined because it listed possible side effects. *Id*. at ¶¶ 56–57, 63 (Page ID # 11–12).

Plaintiff alleges that Defendants all engaged in an unwritten policy of denying him necessary health care. *Id*. at ¶¶ 25, 30, 34, 79, 82, 88, 91, 94–95, 97–98, 100–01, 103 (Page ID # 6–8, 15, 17–21). On March 23, 2015, Plaintiff filed his complaint[4] and application to proceed *in forma pauperis*. Dkt. No. 1–2.

---

[2] This allegation directly conflicts with his allegation in ¶ 50, wherein he states that "these [pain] medications had been tried as well as other over the counter pain relievers and that none worked at relieving the pain." (Page ID # 10).

[3] The page Plaintiff cites in ¶ 29, Exhibit 5-1, provides no support for his allegation.

[4] Many of the pages filed as exhibits to his complaint are not legible and thus were not able to be fully considered. *See* Dkt. No. 1 at Pg. ID 28, 35, 39, 41, 43–44, 46, 50; Dkt. No. 1-1 at 4, 7, 9–10, 12, 16–17.

### III. LEGAL STANDARDS

The standard of review to be employed by the court when examining a report and recommendation is set forth in Section 636 of Title 28, United States Code ("Section 636"). According to Section 636, this Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

Under the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), a prisoner is prevented from proceeding *in forma pauperis* in a civil action under certain circumstances. The Sixth Circuit has stated that the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). The statute states, in relevant part:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

42 U.S.C. § 1915(g). In short, this "three strikes" provision allows the Court to dismiss a case where the prisoner seeks to proceed *in forma pauperis* if, on three or more previous occasions, a federal court has dismissed the prisoner's action because it was frivolous, malicious, or failed to state a claim for which relief may be granted. *See* 28 U.S.C. § 1915(g).

A plaintiff may still, nevertheless, maintain a civil action despite having had three or more civil actions dismissed as frivolous if the prisoner is "under imminent danger of serious physical injury." *Id.*. To establish that a complaint falls within the statutory exception to the three

strikes rule, a prisoner must allege that he or she is under imminent danger at the time of filing the complaint and proceeding seeking *in forma pauperis* status. *See Vandiver v. Vasbinder*, 416 F. App'x 561 (6th Cir. 2011). A mere assertion of past danger is insufficient to invoke the imminent danger exception. *See Rittner v. Kinder,* 290 Fed. App'x. 796, 797–98 (6th Cir. 2008). Rather, "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Id*. at 797 (internal quotation marks omitted).

Furthermore, "allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists." *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). Allegations will fail when they are "conclusory or ridiculous," or when they are "fantastic or delusional and rise to the level of irrational or wholly incredible." *See Rittner,* 290 Fed. App'x. at 798 (internal quotation marks and citations omitted).

As a *pro se* plaintiff, the Court must read the complaint indulgently. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972). The Court must accept a plaintiff's allegations as true unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). However, this does not relieve a *pro se* plaintiff of the duty to satisfy basic pleading essentials. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ("Minimum pleading requirements are needed, even for *pro se* plaintiffs"). If a complaint proffers nothing more than "conclusory, unsupported allegations" of wrongdoing by defendants, then dismissal is appropriate. *Pack v. Martin*, 174 F. App'x 256, 258 (6th Cir. 2006).

## IV. ANALYSIS

Plaintiff Tucker is a serial litigator in federal court and has filed more than 50 cases in the United States District Courts for the Eastern and Western Districts of Michigan.[5] *See Tucker v. Shaheen*, No. 09-CV-12942, 2009 WL 3199688, at *2 (E.D. Mich. Sept. 30, 2009). More than three of Plaintiff's prior civil actions have been dismissed as frivolous or for failure to state a claim upon which relief may be granted.[6] *See Tucker v. Chapin*, No. 4:94–cv–100 (W.D. Mich. June 30, 1994); *Tucker v. Kinney*, No. 4:94–cv–101 (W .D. Mich. June 30, 1994); *Tucker v. Hembree*, No. 4:94–cv–105 (W.D. Mich. July 15, 1994); *Percival, et al. v. Williams*, No. 1:00–cv–849 (W.D. Mich. Nov. 29, 2000). Plaintiff has previously been denied leave to proceed *in forma pauperis* for having three strikes. *See Tucker v. Smith*, No. 06–CV–94, 2006 WL 1155479 (W.D. Mich. April 26, 2006); *Tucker v. Bergh*, No. 06–CV–73, 2006 WL 1008985 (W.D. Mich. April 14, 2006).

---

[5] In the Eastern District of Michigan alone, there are at least 15 cases brought by Plaintiff that were dismissed, typically for frivolity or under the "three strikes" provision. *See Tucker v. McCauley*, No. 09-12757, 2010 WL 2884641, at *2 (E.D. Mich. July 20, 2010) (dismissing complaint under the "three strikes" provision); *Tucker v. Shaheen*, No. 09-12942, 2009 WL 3199688 (E.D. Mich. Sept. 30, 2009) (dismissing complaint under the "three strikes" provision); *Tucker v. Buskirk*, No. 09-CV-13245, 2009 WL 2777798 (E.D. Mich. Aug. 28, 2009) (dismissing complaint under the "three strikes" provision); *Tucker v. Ludwick*, No. 09-CV-13247, 2009 WL 2713950 (E.D. Mich. Aug. 26, 2009) (dismissing complaint under the "three strikes" provision); *Tucker v. Garrett*, No. 09-CV-13248 (E.D. Mich. Aug. 24, 2009) (dismissing complaint under the "three strikes" provision); *In Re L. T. Tucker, Jr.*, No. 05- CV-74539 (E.D. Mich. Mar. 1, 2006) (dismissing as abandoned for failure to file an appellant's brief as ordered); *Tucker v. Brown*, 181 F.3d 104 (6th Cir. 1999) (affirming the district court's judgment and finding the issues raised on appeal to be without merit); *Tucker v. Marutirk*, No. 96-CV-74322 (E.D. Mich. Oct. 28, 1996) (dismissing case); *Tucker v. McGinnis*, No. 93-CV-73623 (E.D. Mich. Feb. 24, 1994) (dismissing case); *Tucker v. Engle*, No. 93-CV-73467 (E.D. Mich. Dec. 23, 1993) (dismissing case as frivolous); *Tucker v. Bush*, No. 93-CV-73597 (E.D. Mich. Oct. 25, 1993) (dismissing case as frivolous); *Tucker v. Craig*, No. 93-CV-73923 (E.D. Mich. Oct. 15, 1993) (dismissing case as frivolous); *Tucker v. Brerwalde*, No. 93-CV-73317 (E.D. Mich. Oct. 14, 1993) (dismissing case as frivolous); *Tucker v. Perry*, No. 93-CV-73318 (E.D. Mich. Sept. 3, 1993) (dismissing case as frivolous); *Tucker v. Reedy*, No. 91-CV-60421 (E.D. Mich. Oct. 30, 1992) (dismissing case).

[6] The Report and Recommendation notes that Plaintiff has been undeterred from repeatedly filing frivolous lawsuits, despite having acquired three strikes. Dkt. No. 15 at 9. The magistrate cautions Plaintiff that the Court could impose a pre-filing injunction against him, requiring him to seek and receive a court order authorizing the filing of any future lawsuits. *See Scott v. Bradford*, No. 13-12781, 2014 WL 6675354, at *4 (E.D. Mich. Nov. 25, 2014) (listing factors to be considered when imposing a pre-filing injunction). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id*. The Court reiterates the magistrate's warning to Plaintiff, as over 20 years of filing unmeritorious cases has not deterred him from continuing this practice.

Consequently, Plaintiff has more than three strikes and cannot proceed in this case unless he can demonstrate that he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Thus, he must allege that he "is under imminent danger of serious physical injury" in order to qualify for the exception to the three strikes rule. Based an in-depth review of the record in this case, Plaintiff has failed to sufficiently show that he was under imminent danger of serious physical injury at the time the complaint was filed.

### 1. Plaintiff's Objection To The Finding Of Fact As To Imminent Danger Of Serious Physical Injury Is Without Merit

In his objection, Plaintiff asserts the report and recommendation made an erroneous finding of fact that he was not under imminent danger of serious physical injury. Dkt. No. 18 at 2. The Court finds that Plaintiff simply makes conclusory statements and arguments in his complaint that he "is under imminent danger of serious physical injury and that the injury is immediate." Dkt. No. 1 at ¶ 84 (Page ID # 16). Plaintiff further contends that "the Court failed to consider the exhibits attach [sic] to the complaint [Doc #1]."[7] Dkt. No. 18 at 2. Although Plaintiff claims in his objection that he "asserted in his *pro se* complaint [Doc #1] "a denied [sic] of adequate medical treatment, and made claim [sic] of being under imminent danger of serious physical injury," Dkt. No. 18 at 2, his claims of denied treatment are wholly conclusory. Dkt. No. 1 at ¶¶ 86, 89, 92, 95, 98, 101, 104 (Page ID # 17–21).

As stated in Plaintiff's grievance responses, his disagreement with the healthcare provider's plan of care does not constitute denial of treatment. *See id.* (Page ID # 32). A thorough review of the record shows that Plaintiff was seen by prison medical staff numerous times and prescribed several types of medication to manage his ailments. Dkt. No. 1 (Page ID #

---

[7] There were 19 exhibits, totaling 62 pages, attached to Plaintiff's complaint. He provides no information or clarity, such as a page number, as to where the Court was to look for the support he alleges is found within the exhibits. A thorough review of all 19 exhibits fails to further elucidate his contention that he alleged anything other than a generalized complaint of pain from peripheral neuropathy.

30, 32, 36, 48); Dkt. No. 1-1 at 11, 14, 18, 32–35. This differs significantly from the facts alleged

in the case upon which Plaintiff relies, *Vandiver*.[8] 727 F.3d at 580. In *Vandiver*, the plaintiff was

denied treatment for the chronic illnesses of diabetes and Hepatitis C by the defendants'

withholding of specialty referrals and physician ordered accommodations. 727 F.3d at 583; *see*

*also Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004) (finding a complete withdrawal of

treatment for HIV and hepatitis to reach the imminent danger exception); *Ibrahim v. District of*

*Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006) (finding a refusal to provide an inmate with eradication

treatment for Hepatitis C was sufficient to constitute imminent danger).

  This is a stark contrast to the case at hand, where Plaintiff has been receiving regular

chronic care visits with medical providers and simply does not agree with the treatment they

have prescribed. *See* Dkt. No. 1-1 at 18. For example, medical providers recommended using

Tylenol and Motrin to control Plaintiff's pain; however, Plaintiff simultaneously asserted that he

had tried these medicines[9] and that the medicines cause seizures if taken for more than two

weeks. Dkt. No. 1 at ¶¶ 50-51 (Page ID # 10). After the pain management committee denied his

request for pain medication, Defendant Kandulski offered him Mobic, a medication that "works

by reducing hormones that cause inflammation and pain in the body." Dkt. No. 1 at ¶¶ 55-56

(Page ID # 11); Dkt. No. 1-1 at 26. Despite receiving a prescription for medicine that treats pain,

as he had requested, Plaintiff appears to have declined Defendant Kandulski's offer of Mobic

---

  [8] Plaintiff's reliance on *Vandiver v. Prison Health Services* is unavailing. In his objection, Plaintiff appears to claim that the Court must find that he is under imminent danger as a matter of law under *Vandiver*, since both plaintiffs have diabetes. Dkt. No .18 at 3–4. What Plaintiff misses when drawing this analogy is that Vandiver alleged he was not being treated for his diabetes, which could lead to "kidney dysfunction, blindness, amputation, cardiovascular disease and other serious and potentially fatal condition[s], including coma and death." *Vandiver*, 727 F.3d at 583. *Vandiver* never mentioned peripheral neuropathy or nerve damage, the condition upon which Plaintiff based his complaint. Further, Vandiver alleged he had been approved for specialty care referral visits, which were then capriciously denied. *Id*. Conversely, Plaintiff does not allege that the failure to give him the pain medication of his choice will result in such dire injuries as coma or death. Plaintiff also did not allege that Defendants withheld specialty care referrals for which he had been approved.

  [9] Again, this allegation is in direct conflict with his allegation at ¶ 18 (Page ID # 5).

before trying it because the drug listed possible side effects.[10] Dkt. No. 1 at ¶¶ 57-58, 63 (Page ID # 11–12). In addition, Plaintiff alleges that Defendant Kandulski is engaging in "experimentation" and "human sacrifice"[11] by prescribing Mobic, because it can be used to treat inflammation caused by osteoarthritis and rheumatoid arthritis.[12] Dkt. No. 1 at ¶¶ 65-67 (Page ID # 13). Plaintiff draws these conclusions from a conversation with a fellow inmate and his own layperson understanding of medicine, rather than the advice of a competent medical professional. Dkt. No. 1 at ¶¶ 66, 69, 71 (Page ID # 13–15).

Although the majority of Plaintiff's complaint focuses solely on the alleged denial of pain medication, he briefly mentions a wide variety of conditions—including ulcers, redness, swelling, infection, bleeding, sleep deprivation, and possible amputation—without specifically alleging that he was denied treatment for these ailments. *Id* at ¶ 84 (Page ID #16–17). The mere fact that Plaintiff experienced an ailment while incarcerated does not give rise to a constitutional violation unless there was a denial of adequate medical treatment for that ailment. *See Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976) ("[W]here the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process"). Since these non-pain symptoms appear nowhere else within Plaintiff's complaint, his imminent danger argument must rest upon the repeated assertions in his complaint regarding pain from peripheral neuropathy.

---

[10] It is not uncommon for a drug to have side effects. Plaintiff's conclusory statement that Mobic "would cause Plaintiff serious adverse effects" is supported by nothing more than Plaintiff's allegation based on his reading of the www.drugs.com information sheet. In fact, the information sheet does not state that individuals taking listed medications will certainly suffer adverse effects; rather, it states that individuals should talk to their physicians about the possible side effects. Dkt. No. 1 at Doc. Con. 26.

[11] The Court finds these allegations to be wholly incredible.

[12] These allegations are made in the face of the explicit statements in Plaintiff's exhibits that "[Mobic] works by reducing hormones that cause inflammation and pain in the body" and that "Mobic may also be used for purposes not listed in this medication guide." Dkt. No. 1 at Doc. Con. 26.

Accordingly, Plaintiff has failed to demonstrate that he is under an immediate risk of serious physical harm. His complaint merely alleges a disagreement with the course of treatment offered by his medical providers and does not provide evidence that treatment was withheld. Plaintiff has suffered with and received treatment for his condition over a lengthy period of time, but has chosen to refuse the pain medicines offered to him based on his unsupported speculations. *See Gresham v. Czop*, No. 1:12-CV-494, 2012 WL 2317558, at *5 (W.D. Mich. June 18, 2012) ("Although Plaintiff disagrees with the course of the medical treatment . . . no basis exists for concluding that he is in imminent danger of serious physical injury from any of these conditions [where his] allegations of imminent danger rest entirely on [his] unsupported speculations"); *Rittner v. Weidman*, No. 2:11-CV-0826, 2011 WL 4712008, at *3 (S.D. Ohio Oct. 6, 2011) (collecting cases in which courts found that a prisoner's mere disagreement with the treatment methods provided cannot support a finding of imminent danger of serious physical harm). It is not the Court's role to second-guess the adequacy of medical care provided by the state in every case, but rather to correct denials of treatment. *Westlake*, 537 F.2d at 860. Here, Plaintiff was not denied pain medicine—instead, he chose to reject it.

Plaintiff's allegations show that he took part in numerous appointments with medical providers for the treatment of his peripheral neuropathy. His allegations also illustrate that he was provided with offers for pain medicine. Accordingly, Plaintiff's disagreement with the course of medical treatment provided to him cannot support a finding that he was in imminent danger of serious physical injury at the time he filed his complaint. Thus, the "three strikes" provision of 28 U.S.C. § 1915(g) applies. Plaintiff's complaint will be dismissed without prejudice and his *in forma pauperis* status will be revoked.

-10-

**2. Plaintiff's Objection To The Determination That His Requests For Equitable Relief Were Moot**

In Plaintiff's second objection, he claims the report and recommendation erred by failing to rule on his motion for a temporary restraining order and preliminary restraining order. Dkt. No. 18 at 4. He states that his request for equitable relief is not moot because factual and legal disputes remain between the parties. *Id*. Although Plaintiff believes that disputes remain, his motions cannot survive after dismissal of the complaint. Given that Plaintiff's complaint will be dismissed without prejudice based on the "three strikes" provision of 28 U.S.C. § 1915(g), all of his motions are properly denied as moot.

## V. CONCLUSION

For the reasons discussed, Plaintiff's Objection to Magistrate Judge Morris's Report and Recommendation is **OVERRULED**. Consistent with the analysis herein, the court **HEREBY ACCEPTS** and **ADOPTS** Magistrate Judge Morris's August 11, 2015 Report and Recommendation [15] as this Court's findings of fact and conclusions of law. Plaintiff's Motions [6, 11] are **HEREBY DENIED AS MOOT**. The Court **DISMISSES** Plaintiff's Complaint [1] **WITHOUT PREJUDICE.**

IT IS SO ORDERED.

Dated: September 28, 2015

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge